1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3             HONORABLE JAMES V. SELNA, JUDGE PRESIDING

4    ESSOCIATE, INC.,                )
                                      )
5                                     )
                                      )
6                    Plaintiff,       )
                                      )
7                                     )
                                      )
8           Vs.                       )   No. SACV13-18886-JVS
                                      )
9                                     )
                                      )
10   CLICKBOOTH.COM, LLC,             )
                                      )
11                                    )
                                      )
12                   Defendants.      )
                                      )
13   _____ )

14

15

16              REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                        *MOTION HEARING*

18                     SANTA ANA, CALIFORNIA

19                 TUESDAY, FEBRUARY 10, 2015

20

21

22             MIRIAM V. BAIRD, CSR 11893, CCRA
               OFFICIAL U.S. DISTRICT COURT REPORTER
23             411 WEST FOURTH STREET, SUITE 1-053
               SANTA ANA, CALIFORNIA 92701
24                    (714) 894-5384
               MVB11893@aol.com
25

1                           **A P P E A R A N C E S**

2

3    **IN BEHALF OF THE PLAINTIFF,**        DEREK A. NEWMAN
     **ESSOCIATE:**                         NEWMAN DU WORS LLP
4                                           100 WILSHIRE BOULEVARD
                                            SUITE 950
5                                           SANTA MONICA, CA 90401
                                            310-359-8200
6

7

8

9

10   **IN BEHALF OF THE DEFENDANT,**       DARREN M. FRANKLIN
     **CLICKBOOTH.COM, LLC:**               ANDREW KIM
11                                          SHEPPARD MULLIN RICHTER AND
                                            HAMPTON LLP
12                                          333 SOUTH HOPE STREET 48TH
                                            FLOOR
13                                          LOS ANGELES, CA 90071-1422
                                            213-620-1780
14                                          - AND -
                                            DAVIDSON LAW GROUP
15                                          BY BEN DAVIDSON
                                            11377 WEST OLYMPIC
16                                          BOULEVARD
                                            LOS ANGELES, CA 90064
17

18

19

20

21

22

23

24

25

```
 1     SANTA ANA, CALIFORNIA; TUESDAY, FEBRUARY 10, 2015; 11:00 A.M.

 2                              ---

 3

 4              THE CLERK:  Calling SACV13-1886 and SACV14-00679,

 5     Essociate Inc., vs. 4355768 Canada, Inc., and Essociate,

 6     Inc., vs. Clickbooth.com, LLC.

 7              Counsel, please state your appearance for the

 8     record.

 9              MR. NEWMAN:  Good morning, Your Honor.

10              My name is Derek Newman.  I represent the plaintiff

11     Essociate, Inc.

12              THE COURT:  Good morning.

13              MR. DAVIDSON:  Good morning, Your Honor.

14              Ben Davidson from Davidson Law Group for defendant

15     CrakMedia.

16              THE COURT:  Good morning.

17              MR. FRANKLIN:  Good morning, Your Honor.

18              Darren Franklin and Andrew Kim of SheppardMullin

19     for defendant Clickbooth.com, LLC.

20              THE COURT:  Good morning.

21              We have parallel motions in these cases which are

22     addressed in a single tentative.

23              Mr. Newman, you're up first.

24              MR. NEWMAN:  Thank you, Your Honor.

25              The Court should deny the motion for judgment on
```

1　the pleadings because the '660 patent is not directed at the

2　abstract concept of identifying and tracking referrals from

3　referral sources.  To the extent that it is, it adds an

4　inventive concept.  What the patent is directed at --

10:58AM　5　　　　　　THE COURT:  Does it not track referrals from

6　various sources?  Does it not do that?

7　　　　　　MR. NEWMAN:  There is one element to the patent --

8　　　　　　THE COURT:  So it does do that; correct?

9　　　　　　MR. NEWMAN:  There is -- tracking is part of the

10:58AM　10　invention, but with every invention, it builds upon prior

11　inventions.  In fact, there is not an invention that exists

12　in the world that isn't built upon something that existed

13　before.  Yes, tracking existed before.  It is part of any

14　affiliate program.

10:58AM　15　　　　　　I suppose the best way to illustrate that --

16　　　　　　THE COURT:  But really isn't tracking an abstract

17　concept that can be implied in many different contexts?

18　　　　　　MR. NEWMAN:  Your Honor, I would concede -- in

19　fact, I think that might be the best way to illustrate that

10:58AM　20　is not the concept that the '660 patent is directed at.  The

21　idea of identifying and tracking referrals from referral

22　sources is an abstract concept.

23　　　　　　Applying *Alice* and *Mayo Collaborative vs.*

24　*Prometheus Labs,* just saying apply it to a computer would not

10:59AM　25　be patent eligible, but somebody did do that.  It was

|   |   |
|---|---|
| 1 | Amazon.com.  Amazon.com came up with the first affiliate |
| 2 | program.  They were successful in getting a patent, and it |
| 3 | changed the way Internet commerce was done, because |
| 4 | publishers, that is, Web site owners, could sign up directly |
| 10:59AM 5 | at Amazon.com's affiliate program, place an ad to Amazon, and |
| 6 | send Amazon traffic. |
| 7 | Amazon would pay the affiliate.  It was this direct |
| 8 | relationship.  It was so successful that thousands of |
| 9 | affiliate programs grew across the Internet.  That became a |
| 10:59AM 10 | problem.  Publishers, the Web site owners, they didn't know |
| 11 | which affiliate programs were best.  They didn't know how to |
| 12 | locate the affiliate programs.  They didn't know which paid |
| 13 | the most.  So entrepreneurs and inventors got together to |
| 14 | improve upon it. |
| 11:00AM 15 | That was done by a company called Commission |
| 16 | Junction.  Commission Junction came up with the affiliate hub |
| 17 | model.  LinkShare owns a patent for the affiliate hub model. |
| 18 | What that is is there is a single source, but it is just a |
| 19 | broker where the publisher can go to sign up directly with |
| 11:00AM 20 | multiple merchants. |
| 21 | So under the affiliate hub model, no longer does |
| 22 | the publisher have to search for affiliate programs.  It |
| 23 | still must sign up directly.  Consequently, the merchant has |
| 24 | to deal with relationships with multiple publishers.  Has to |
| 11:00AM 25 | pay multiple publishers.  Has to maintain sophisticated |

UNITED STATES DISTRICT COURT

| | |
|---|---|
| | 1 |

1    bookkeeping.

2          At the time this was going on and Commission

3    Junction was successful in the late '90's, Evan Horwitz and

4    Michael Landau who had met each other at UC Berkeley, were

11:00AM  5    Web publishers.  They had a site.  They were sending traffic

6    to affiliate programs.  They wanted what everybody wanted;

7    namely, a single source where a publisher can sign up and

8    send traffic to multiple merchants without ever having to

9    sign up directly with that merchant.  That was the goal.

11:01AM  10   Nobody had done it, but they came up with a unique and novel

11   way for making it happen.

12          Specifically, through the invention that is

13   disclosed in the patent, they figured out a way to configure

14   the system of the existing merchant affiliate system and

11:01AM  15   assign unique codes, a SID and a TWID, that had never existed

16   before, and provide for correlating between those codes that

17   would allow the publisher to reach the merchant without ever

18   having a direct relationship.  So now finally, for the first

19   time in history, multiple publishers from the across the

11:01AM  20   Internet could send traffic to multiple merchants without

21   ever having a direct relationship.

22          When Michael Landau and Evan Horowitz came up with

23   this invention, they thought it was going to be big, because

24   commission Junction was.  They used Commission Junction.

11:01AM  25   Everybody wanted to sign up with one source.  Essociate was

11:02AM

11:02AM

11:02AM

11:02AM

11:02AM

11:03AM

 1    that source.  Now they owned the '660 patent.  What actually

 2    happened was they started their business.  It still exists

 3    today.  There are lots and lots of infringers.  The patent

 4    system is designed to encourage and protect the type of

 5    invention that Essociate has.

 6         It's not an abstract concept the '660 patent

 7    targets; namely, multiple publishers connecting to multiple

 8    merchants without ever having a direct relationship.  It's

 9    new and novel.  We would encourage this Court to apply the

10    test that we've seen some other Courts apply when looking at

11    *Alice*.

12         The District of Delaware did this in the

13    *Intellectual Ventures* case.  It's called a preemption test.

14    What that District did is look at whether the patent preempts

15    the entire field for the abstract concept.  So the way this

16    Court would go about doing that is they say what is the

17    abstract concept?  In the Court's tentative, the Court

18    identified one.  It is identifying and tracking referrals

19    from multiple affiliate sources.  At the beginning of this

20    argument, I conceded that is an abstract concept.

21         So does this patent preempt the entire field?  The

22    answer, no.  Well, there's the stand-alone system.  That's

23    one way to do it.  There's the hub model.  That's another way

24    to do it.  There's Essociate's patents and there's others.

25    For example, Essociate made the mistake -- I'm almost

| | |
|---|---|
| 1 | embarrassed to say this -- of filing a lawsuit in the Western |
| 2 | District of Wisconsin against Azoogle.  Azoogle won summary |
| 3 | judgement of non -- infringement.  They did so because the |
| 4 | Court found they didn't utilize the new and novel invention |
| 11:03AM   5 | of the '660.  They utilized cookie and pixel tracking.  Yet, |
| 6 | another way to accomplish the end of the abstract concept of |
| 7 | identifying and tracking referrals from multiple referral |
| 8 | sources. |
| 9 | Because there is so many ways to accomplish the |
| 11:03AM   10 | abstract concept that the Court identifies in its order, this |
| 11 | inventive concept of connecting multiple publishers to |
| 12 | multiple merchants which was a need back in 2000 when all |
| 13 | there was the hub and Amazon.com direct model.  It's a new |
| 14 | and inventive concept. |
| 11:03AM   15 | So, Your Honor -- |
| 16 | THE COURT:  But does the existence of multiple ways |
| 17 | to carry out the abstract idea necessarily get you around |
| 18 | *Alice*? |
| 19 | MR. NEWMAN:  Yes, Your Honor.  *Alice* is simple to |
| 11:04AM   20 | me.  When I read the case, I think that it is very well |
| 21 | written and it says the following:  If you have an abstract |
| 22 | concept, and you simply apply it to a computer, that's not |
| 23 | patent eligible.  That's not what we did here.  Maybe that's |
| 24 | what Amazon.com did.  The Commission Junction took it a step |
| 11:04AM   25 | further and added an inventive concept.  Essociate took it |

| | |
|---|---|
| 1 | much further with an additional inventive concept.  That's |
| 2 | why *Alice* does not apply to this patent. |
| 3 | To the extent that the Court were going to look to |
| 4 | whether any elements of the patent were ever present before, |
| 11:04AM 5 | this Court could invalidate every single patent because every |
| 6 | patent has building blocks.  Essociate is not trying to |
| 7 | protect the building blocks.  If it was, then Azoogle |
| 8 | wouldn't have won summary judgement on non-infringement in |
| 9 | the Western District of Wisconsin.  The Amazon model would |
| 11:05AM 10 | infringe.  The Commission Junction model would infringe.  The |
| 11 | so-called embedded image model, which is another way of doing |
| 12 | this, that would infringe too. |
| 13 | Essociate has the best model.  It was inventive. |
| 14 | Michael Landau and Evan Horowitz started Essociate in 2000. |
| 11:05AM 15 | They had this grand idea.  They had a patent and they |
| 16 | obtained business, and everyone knocked it off.  It was |
| 17 | knocked off because these bigger companies with greater |
| 18 | resources thought that they could trade off of the invention |
| 19 | Evan and Michael obtained.  This Court should not invalidate |
| 11:05AM 20 | that.  It's patent eligible.  It's protected under the |
| 21 | United States patent laws.  The reason why is because the |
| 22 | concept is connecting multiple publishers with multiple |
| 23 | merchants without there ever having to be a direct |
| 24 | relationship.  That didn't exist before.  That's the idea. |
| 11:05AM 25 | Assuming that the Court's tentative is correct, and |

|         |    |
|---------|----|
|         | 1  | the idea is really tracking and identifying referrals from |
|         | 2  | referral sources, there's the invented concept of allowing |
|         | 3  | for that mechanism that didn't exist before Evan and Michael |
|         | 4  | created it.  The Court should deny the motion. |
| 11:06AM | 5  | THE COURT:  Thank you. |
|         | 6  | Mr. Davidson? |
|         | 7  | MR. Davidson:  Thank you, Your Honor.  For |
|         | 8  | CrakMedia I'll address some of the points and my colleague |
|         | 9  | representing Clickbooth, Mr. Franklin, will address a few |
| 11:06AM | 10 | additional points. |
|         | 11 | I think -- well, we think the Court is right.  We |
|         | 12 | have looked at the tentative.  We can find no flaw at all in |
|         | 13 | the Court's analysis and logic.  It flows directly from |
|         | 14 | *Alice*. |
| 11:06AM | 15 | THE COURT:  Why doesn't the addition of the ability |
|         | 16 | to go to multiple sources through one source without further |
|         | 17 | identification add the degree of novelty that *Alice* requires? |
|         | 18 | MR. Davidson:  Well, Your Honor, that's not really |
|         | 19 | the test. |
| 11:07AM | 20 | THE COURT:  Well, but I mean, I think Mr. Newman's |
|         | 21 | position is that that is what is new and novel and what gets |
|         | 22 | him over the second hurdle in *Alice*. |
|         | 23 | MR. Davidson:  If I understood his argument, it's |
|         | 24 | that using this method -- |
| 11:07AM | 25 | THE COURT:  Right. |

1          MR. Davidson:  Someone that is a Web site owner a

2     Webmaster who doesn't sign up for that particular network

3     can send traffic to not one network but three networks.

4          THE COURT:  Without any direct interaction with

11:07AM   5     those three networks.

6          MR. Davidson:  Correct.

7          The way we analyze that, Your Honor, is under

8     *Alice*, first of all, with -- with respect to -- we want to

9     apply the way Your Honor did in the tentative and *Alice* did.

11:07AM  10     Let's look at the first step.  It's essential to understand

11     the abstract idea.  It is no question the idea there is let's

12     allow these networks to accept referrals from outside.  In

13     this case, from people -- they don't have a relationship

14     with.  That's why it's a referral from outside.  Webmaster we

11:08AM  15     didn't sign up.  So yes, you can do that.  In fact, a lot of

16     what Essociate is talking about is trying to tell a story of

17     their invention.

18          What we're saying is yes, they came up with the

19     idea that people like Amazon, LinkShare these companies who

11:08AM  20     are on the Internet with these affiliate networks, they

21     shouldn't be so selective about who they do business with.

22     They should accept outside referrals.  So they said, look,

23     open up your network.  Let us send you referrals.  That's the

24     abstract idea.

11:08AM  25          So on your next question, step two, why isn't it

1    enough that using this method a so-called virtual affiliate a

2    Webmaster can send traffic to multiple people?  You can

3    always send traffic to multiple people.  You can do it with

4    or without the patent.  What they've done is they said we

11:09AM  5    will send you a link that allows for the bookkeeping of that

6    so you get credit for it.  I mean, anyone can put a banner ad

7    from anyone or Amazon and send traffic, send referrals, send

8    business, but the -- the second step of this analysis is what

9    did they do that is claiming to be inventive beyond the

11:09AM  10   abstract idea?  There isn't anything.  It's just electronic

11   recordkeeping.

12        Electronic recordkeeping is a great thing.  It has,

13   you know, perhaps all of the advantages that my colleague

14   here from Essociate is saying.  It might be wonderful.  It

11:09AM  15   might be inventive in the sense that it wasn't done for

16   affiliate systems before, but that doesn't mean that it's

17   patent eligible.

18        The reason is, Your Honor, it wasn't anything that

19   used the Internet in the way that it is not meant to be used.

11:10AM  20   You know, if you look at -- I mean, what they've done -- I

21   mean, then -- you know, Essociate went out of the records to

22   talk about things that are not in the record Commission

23   Junction and, you know, Mr. Horowitz and Mr. Landau.  But

24   what they did is they said to the companies like Amazon,

11:10AM  25   don't be so selective; act more like the real world.  There's

1    a ton of people out there in the world who would like to send

2    you business.  Don't be so selective about screening them

3    out, that you only accept referrals from people who have

4    signed up to your network.  Let us send you the referrals.

5    We will keep track of it.

6         Under *Alice* step two, that keeping track of it,

7    using electronic recordkeeping, which is all it is, URLs,

8    which they didn't invent.  Webmaster I.D.'s, which they

9    didn't invent.  A look-up table so that the URL has a

10   Webmaster I.D. that would be consistent with the

11   recordkeeping of the merchant, that is just electronic

12   recordkeeping.

13        I would submit, Your Honor, under *Alice*, I mean,

14   Your Honor asked the question, isn't -- I think you were

15   asked if it wasn't -- if there are other ways of doing this

16   without infringing, does that avoid *Alice?*  Essociate says,

17   yes.  The answer is no.  In fact, if you look at the claims

18   in the *Alice* case, there are multiple ways of doing it --

19   doing that escrow system without infringing, that's what the

20   Federal Circuit dissenting judges were saying.  They are

21   saying, look, you don't have to infringe the patent; do it

22   another way.  The Supreme Court didn't care about that.  What

23   they cared about is the way that was used is this

24   conventional technology.  They didn't go beyond -- they

25   didn't make computers run any better.  They didn't invent a

| | |
|---|---|
| 1 | new computer or new computing system.  They didn't make |
| 2 | computers any faster. |
| 3 | Here, Essociate, may have been the first one to say |
| 4 | to the established affiliate networks don't be so selective |
| 11:12AM 5 | about who you do business with.  That might have been a good |
| 6 | idea.  It might have been great, but it -- it's not -- they |
| 7 | are not entitled to claim that abstract idea of configuring. |
| 8 | If you look at the first element of the claim, it's right |
| 9 | there.  That's what they are doing.  They are saying, hey, |
| 11:12AM 10 | look, if you configure an existing affiliate system, this |
| 11 | pre-existing technological environment, to receive outside |
| 12 | referrals, we're going to sue you.  So all of the talk about |
| 13 | you know, people have knocked them off. |
| 14 | There's a flip side to that.  The flip side to |
| 11:12AM 15 | that, Your Honor, is they've been suing a lot of companies. |
| 16 | They are doing nothing other than using the Internet for what |
| 17 | it is meant to be used for.  They didn't invent the Internet. |
| 18 | They didn't invent affiliate marketing. |
| 19 | THE COURT:  A lot of people didn't invent the |
| 11:12AM 20 | Internet. |
| 21 | MR. Davidson:  That's true, Your Honor.  We're not |
| 22 | here to defend or attack the Amazon patent.  It's just not |
| 23 | before Your Honor.  We're not here to say every patent in the |
| 24 | world involving the Internet is patent ineligible.  We're |
| 11:13AM 25 | here to say this particular patent when all it adds is the |

         1    abstract idea of receiving and tracking referrals for these

         2    existing technological environments, that you're not allowed

         3    to monopolize that.  It's not enough to say we sued Azoogle,

         4    but they got out of infringement because they don't fit

11:13AM  5    squarely within our claims.

         6              THE COURT:  That is sort of red herring to me.

         7              MR. Davidson:  It is, Your Honor.  The point is not

         8    could somebody avoid infringing your patent.  The point is --

         9              THE COURT:  Is the patent valid in the first place.

11:13AM 10              MR. Davidson:  Is the patent valid.  What did you

        11    add beyond the abstract idea?  When you said apply it, like

        12    in *Mayo,* you know, they told doctors to apply the discovery

        13    of this correlation they found between certain drugs'

        14    concentration and how effective it was going to be in your

11:13AM 15    body.  They said apply it.  They said apply it using

        16    existing, you know, systems that doctors use for blood

        17    measurement, et cetera.  That didn't entitle the patentee to

        18    a patent in *Mayo*.

        19              And in *Alice*, simply saying apply it, you know,

11:14AM 20    they had the idea for this very complicated system that

        21    allows you to be an intermediary.  I think Your Honor, found

        22    the analogy between that issue and our issue which is

        23    Essociate acted as an intermediary.  All this patent is about

        24    is making sure people get paid money for a transaction.  And

11:14AM 25    to keep track of it, they simply use just the electronic

1    recordkeeping that computers are for, the URLs are for.

2            I thought that today Essociate would argue about

3    that and they've never argued about that.  They never

4    addressed why it is that they've done anything more than

11:14AM   5    electronic recordkeeping to apply this abstract idea to

6    existing affiliate systems.  So for that reason, Your Honor,

7    we think the tentative is right.  We can't find a word of it

8    that we find fault with.

9            One thing I did want to address is on judicial

11:15AM   10    notice, the tentative showed us we didn't need it.  We don't

11    need it, but you also explained there are three exceptions

12    for looking outside the pleadings.  I would say in

13    particular, you know, given some of the commentary from

14    Essociate about, you know, Amazon and prior art, the Court

11:15AM   15    can and should look at these publicly available documents.

16    They are not subject to reasonable dispute.

17            You know, the Amazon patent is prior art on the

18    face of the Essociate patent.  It shows -- as the discussion

19    of the prior art does in the patent itself, that Webmaster

11:16AM   20    I.D.'s were old.  URLs were old.  All they did is they said

21    we'll send you a URL for somebody who hasn't signed up to

22    your network so we can keep track of the business he sends

23    you.

24            So we think the Court should take judicial notice

11:16AM   25    of at least the Amazon patent, and, in fact, all of these

1    publicly available articles are not challenged by Essociate.

2    So the Court can and should take notice of it.

3            I'll let Mr. Franklin address some of the other

4    issues.

11:16AM  5            THE COURT:  Very good.  Thank you.

6            Mr. Franklin.

7            MR. FRANKLIN:  Thank you, Your Honor.  The notion

8    of sending multiple publishers to multiple merchants is a

9    restatement of the abstract idea of receiving and tracking

11:16AM 10   referrals from referral sources.  Once the tentative

11   recognizes that that is the abstract idea that the claims are

12   directed to, then we move to step two of *Alice*.

13           What is there in the claims transforms the nature

14   of the claims into something significantly more than the

11:17AM 15   abstract idea?  There isn't anything in these claims because

16   these claims implement just the normal and expected operation

17   of the Internet.  The patent recognizes that affiliate

18   systems are conventional parts of the Internet.  In the

19   background of the invention section, it even says that most

11:17AM 20   merchants are already using an affiliate system.

21           The claims talk about configuring an existing

22   merchant affiliate system by assigning I.D. numbers.  That's

23   just part of how computers work.  Receiving user requests,

24   again, part of how the Internet works.  Correlating an I.D.

11:17AM 25   system, an I.D. number between one I.D. system and another,

```
 1   well, that's how you would expect the Internet to work if you

 2   were going to be going from one system to another.  Then

 3   generating a URL that includes the I.D., again, that's how

 4   you would expect the Internet to work.  That's how people

 5   communicate on the Internet by providing information through

 6   the URLs, not through the mail or telephone or even e-mail.

 7   So there's nothing in the claims that transforms them from

 8   anything more than the abstract idea of receiving and

 9   tracking referrals from referral sources.

10        Essociate mentions the Intellectual Ventures case.

11   Without getting too deeply into it, I would note that in that

12   case, the patented solution, according to the District of

13   Delaware Court, did not operate the Internet in a normal and

14   expected manner and provided Web page results that were

15   different from standard Internet use.  That is -- that case

16   thus has no applicability to the present case.  Where if you

17   look at the claim language, everything in there is standard

18   Internet use.  Assigning I.D.'s, correlating I.D.'s,

19   generating URLs.

20        For that reason, these claims are unpatentable

21   under Alice and should be found invalid.

22        THE COURT:  At least one advance over the prior

23   systems is the ability of a merchant basically anonymously to

24   get into other networks.

25        Does that layer satisfy the second prong of Alice?
```

```
 1              MR. FRANKLIN:  It does not.

 2              THE COURT:  Why?

 3              MR. FRANKLIN:  Because anonymity is not a feature

 4     that comes from anything that Essociate came up with.  It's a

 5     feature that just arises from the use of the Internet itself.

 6     In the normal business context, it's easy to know who you're

 7     dealing with because you're seeing the person face-to-face.

 8     It's the Internet, the pre-existing technological environment

 9     of the Internet that provide the anonymity, nothing that

10     Essociate did by putting an intermediary between the

11     affiliate and the merchant.

12              THE COURT:  Thank you.

13              Mr. Newman, why don't you address the judicial

14     notice point in addition to whatever you want to.

15              MR. NEWMAN:  I think that judicial notice question

16     is kind of a red herring.  Unlike whether affiliate tracking

17     is an abstract concept, I'm not going to concede on it.  But

18     there is no patent that exists that isn't based upon prior

19     art.  That's why in the patent we disclose prior art.  So to

20     the extent the Court were to accept the Amazon patent, I

21     don't think it changes the analysis.

22              When Edison invented the light bulb, it contained

23     lots of parts that all existed before he had the light bulb.

24     If we were in the Edison Court days of yore, I suppose that

25     Crak and Clickbooth would talk about how metal existed.  If
```

```
 1      you look at the claim of the patent, it talks about metal.

 2      It talks about combining certain parts.  Yeah, sure, light --

 3      light may not have existed before, but everything did before

 4      the light.

 5                  THE COURT:  Well, I think Edison would get past the

 6      Alice step past two.  Light is an abstract concept, you know,

 7      literally, existed --

 8                  MR. NEWMAN:  Yes.

 9                  THE COURT:  -- since the beginning of the world.

10                  MR. NEWMAN:  Since the sun.

11                  THE COURT:  But I don't think people would quibble

12      that Edison added a novel feature with his incandescent light

13      bulb.

14                  MR. NEWMAN:  It's the quintessential patent.

15      Although the Essociate patent is not the quintessential

16      patent, because it's not as simple as the light bulb, one of

17      the greatest inventions of all time, it does add features.

18                  Because before Essociate's patent, there were these

19      affiliate programs that are disclosed in the prior art that

20      the defendants want the Court to take judicial notice of.  It

21      wasn't done the way Essociate does it.  People needed more.

22      They wanted to -- publishers wanted to sign up at a single

23      source.

24                  THE COURT:  But doesn't that kind of beg the

25      question -- it seems to me, if you have an abstract idea, the
```

UNITED STATES DISTRICT COURT

```
 1   fact that it can be implemented in a number of different ways
 2   doesn't get you over the second prong of *Alice*.  The question
 3   is, well, suppose you have five ways you can do it.  It's
 4   conceivable all five of those would not pass *Alice*.  The
 5   focus is on the particular invention before the Court and
 6   whether there is something added that gets you over the
 7   second prong, whether these other examples are out there or
 8   not for implementing the same generic idea, if you will.
 9           MR. NEWMAN:  So the question is, where is the light
10   coming from on this invention?  The answer is, there is
11   anonymity because before with the affiliate hub model, the
12   publisher had to sign up directly with the merchant.  There
13   was no anonymity.
14           Another point is, as I've seen in the papers and
15   even in the Court's tentative, this concept of bookkeeping.
16   It's just bookkeeping.  This is unbookkeeping [verbatim].
17   Here, the publisher signs up with one source, Essociate, the
18   affiliate pooling system.  Essociate has relationships with
19   all of the merchants.  It reduces the bookkeeping.  It
20   reduces the bookkeeping burden on the merchant affiliate
21   programs.  It reduces the bookkeeping on the publishers who
22   only have to sign up with one source.  This is unbookkeeping.
23   It provides for anonymity.  It provides for less bookkeeping.
24   It provides for an efficient way for publishers to send
25   traffic to many a source without having to sign up directly.
```

It reduces contracts.  It reduces customer service.  It

reduces all the elements that made it difficult for

publishers in the past to do business on the Internet with a

direct system and then an affiliate hub system.

11:23AM    The way that I read the tentative is the Court is

breaking down every element of the patent to see whether they

existed before.  Almost an obvious or anticipation type of

analysis.  I don't think this is an obvious or anticipation

analysis.  It required a different analysis and not really

11:23AM looking at the inventive concept.

The Federal Circuit in applying *Alice* in *DDR*

instructed that the Court should search for the inventive

concept by looking at all of the elements of the claims as

applied in practice.  When the '660 patent is applied in

11:24AM practice here, you see the light that didn't exist before the

patent.  The ability to sign up at one source instead of

multiple sources, the anonymity, the reduction of

bookkeeping, and other features.  That is what the '660

patent accomplished that made it a unique and novel invention

11:24AM that others copied and essentially stole from Essociate even

though Essociate, Michael Landau and Evan Horowitz, had had

to come up with that idea before anyone else did and reduced

it to patent protection as the patent system allows them to

do.

11:24AM        THE COURT:  Thank you.

```
 1              Anything further?

 2              MR. Davidson:  Yes, Your Honor.

 3              THE COURT:  Mr. Davidson?

 4              MR. Davidson:  On the judicial notice, Essociate, I

 5    believe said they are not going to concede on it.  In fact,

 6    there's nothing in their opposition challenging it.  So we

 7    believe they did concede on it.  If they had an objection to

 8    any of the documents, that was the time to make the

 9    objection.  We haven't seen any challenge or even a word

10    about the documents.

11              That's all I'll say about that.

12              THE COURT:  The Court has a gatekeeper role, if you

13    will, in determining what we'll receive under 201.

14              MR. Davidson:  Your Honor, that's -- that's right.

15    But -- but -- I -- I just wanted to address that.  You know,

16    they did say well, it's a red herring because there's no

17    prior art.  What you're seeing from Essociate is we don't

18    have a prior art patent that anticipates theirs.  That's

19    really not the reason we cited the prior art.

20              But beyond that, I want to address a few points

21    that were just made now by Essociate about how this is not

22    bookkeeping, it's unbookkeeping.  It is bookkeeping.  It's

23    bookkeeping by an intermediary.  When Essociate says we

24    reduced the bookkeeping for the affiliate systems, the

25    existing affiliate systems, you reduced it by outsourcing it
```

```
 1    to somebody else who does the bookkeeping for you.
 2            THE COURT:  Somebody is still doing the same
 3    bookkeeping to get the same result.
 4            MR. DAVIDSON:  That's right.  We explained in the
 5    briefing, the affiliate hub reduces some of the bookkeeping
 6    for the stand-alone systems.  They reduce the bookkeeping
 7    further by taking it out.  When you look at how --
 8            THE COURT:  They don't reduce it.  It's just done
 9    in a different place by different people.
10            MR. DAVIDSON:  That's right.  That's right.  What
11    we would say -- I mean, essentially, I mean there's a lot we
12    could say.  We disagree on their read of DDR.  We certainly
13    disagree anyone is stealing anything from Essociate.  We
14    believe anyone on the Internet who wants to -- I would
15    actually -- you know, refer traffic and -- and keep track of
16    it, should not get sued on a patent.
17            In terms of the analysis, we think all of it, it --
18    it must start with Alice, step one.  It's an abstract idea.
19    And then when you look at the claims, we -- we -- we didn't
20    hear anything about the claims today.  When you look at the
21    claims, configuring an existing system to do it, that's just
22    applying the idea.  Receiving a user request, they didn't
23    invent that.  That's what you do when you have a banner ad.
24    Correlating it, that's just a look-up table.  Generating URL,
25    that works for the merchant.
```

1    We can talk about all of these supposed advantages

2    and maybe there are advantages.  Maybe when they were coming

3    up with these ideas, they -- they contributed something.  No

4    one is saying Ultramercial didn't have a patent that

11:27AM   5    contributed something.  No one is saying the people in *Alice*

6    didn't contribute something.  These were valuable things that

7    people did.  They just were not patent eligible.

8           THE COURT:  Well, the question is, do you get a

9    government-sanctioned monopoly?

11:27AM   10          MR. Davidson:  That's exactly right.  That's

11   exactly right.  We think the answer is no.  When you look at

12   the claims, as Your Honor did in the tentative, when you

13   follow the analysis in the tentative, I really can't add

14   anything more to that.  It is exactly right.  It follows

11:28AM   15   *Alice*.

16          We didn't even talk today about the machine or

17   transformation test, which is an alternative basis for the

18   Court's decision.  These claims don't do anything other than

19   keep track of traffic.  They should not have a patent on it,

11:28AM   20   Your Honor.

21          THE COURT:  Thank you.

22          Mr. Franklin, anything further?

23          MR. FRANKLIN:  Your Honor, may I have a moment to

24   confer with co-counsel?

11:28AM   25          THE COURT:  Sure.

1       MR. FRANKLIN:  The only thing I would add --

2               THE COURT:  That's fine.  You can do it from there.

3       MR. FRANKLIN:  The only thing I would add is that

4  Clickbooth joins in CrakMedia's comments regarding the

5  request for judicial notice.  We will submit.

6               THE COURT:  I'm going to take one more look at

7  this.  The matter will stand submitted.

8       Thank you for coming in this morning.  I appreciate

9  the fact that we were able to get this back on track so

10  quickly.

11              (Proceedings concluded at 11:28 a.m.)

12                        CERTIFICATE

13  I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

14  TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

15  THE ABOVE MATTER.

16  FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

17  REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

18  REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

19

20  /s/ Miriam V. Baird          02/27/2015

21  MIRIAM V. BAIRD                     DATE
    OFFICIAL REPORTER

22

23

24

25